Good morning, your honors. Fire is hot, things fall down, sharp objects cut, and threaded fasteners loosen on vibration. You're a mechanical engineer, I take it? No, a liberal arts degree, your honor. Did you perform peer review and testing of the vibration problem in this case? I did not, your honor. Did your expert? No, your honor, our expert did not. That's part of the problem, isn't it? I don't think it is, your honor, under Daubert and Kumho. The reliability issue with respect to our expert, first of all, the four standards listed in Daubert are non-exclusive and were never designed to outline all of the ways in which expert testimony can be established as reliable. The important part about the Daubert test is that it be the theory that's subjected to peer review or testing or whatever other method establishes reliability, not the actual conclusions. And that, I think, your honors, is where the Court erred in this case. First of all, the Court erred by requiring – what the Court required was some empirical foundation of reliability. And to look to what that meant with respect to the Court's order, he indicated there wasn't any testing of this particular saw and that there was no peer-reviewed materials on whether the threaded fastener on the Wacker saw or other power saw was subject to coming loose. With respect to the issue on testing, what our expert did is use a fundamental mechanical principle, that is, threaded fasteners loosen, and applied that fundamental experiment – that was the opinion offered by our expert, and it's supported by the evidence in the record. It's supported by Wacker's own manual with respect to the saw. Wacker's own manual suggests that you need to tighten the fastener as much as you can, and it's supported   before you use it. Our client, Mr. Bowbacker, testified that before each use, he tightened the threaded fastener. The expert indicated – so the only evidence in the record, your honors, is that threaded fasteners loosen on vibration when they're not properly – when there's no proper locking mechanism. What the expert – That is, the question is, if you have some principle of physics or mechanical engineering, a simple principle of physics such as gravity, do you – is it within the judge's discretion to say, okay, I credit the principle of physics, but with respect to this case and this product, there's got to be some either peer review or something that links it up to this situation. I'm not going to just let him come in and say, here's the principle of physics, and then here's the saw, and I'm marrying the two. Why isn't that, you know, in the district court's discretion as the gatekeeper that the Supreme Court appointed him as? Well, if that were the case, your honor, I think you may very well have a point. If those were the only two points of analysis, that there's threaded fasteners loosen, therefore this one loosened. But that was not the steps of logical analysis performed by our expert. He started with the fundamental design principle that threaded fasteners loosen on vibration. And he then applied that fundamental – then went to the next step and said, you've got a saw that vibrates. Then the threaded – he's got empirical evidence that the threaded fastener will loosen based on the testimony of our client, based on observations and based on the evidence in the manual itself that that particular threaded fastener will loosen. I'm – let me ask you this question to make sure that I understand the facts in this case. Was the saw ever available to Augsburger to test his theory on? The actual saw, by the time it reached Mr. Augsburger, he physically had control of the saw, but it was – So he had control of the saw. Correct. He could have tested it. And as far as I can tell, he did not. Is that right? I guess it all depends, Your Honor, on how you're defining testing. Did he actually start up that particular saw and measure something with it? No. Because the way that saw came to him, it was inoperable, missing a number of parts, including the threading fastener. Did he test any other series of similar or identical saws? He operated the – Yes or no? He operated the saw. I guess if that counts as testing. No, no, no. I mean, did he do any testing on vibrations on other saws? Even if it didn't do this saw, did he have other similar or identical saws on which he performed any kind of empirical tests? Not with – no, not with respect to the saws that – the other saws that he examined, no. See, that's a problem also. There's no precise testing of your generic principle that the threaded fasteners loosen on either the saw that was involved in this case or identical or similar saws. With respect to the other saws, Your Honor, that our expert examined, those weren't tested because the locking mechanism that existed on those saws was dramatically different than the locking mechanism in use on the Wacker saw. And there are no other Wacker saws in existence, such as the one that is the – at issue in this case. I mean, ordinarily what experts do, if object A is blown up, they go get other object A's and they test those. And they say, I've tested 10 other saws, put them under similar vibration, turned them on, and the threaded fastener flew off. And we don't have any of that in this case. That's correct. He did not actually test the Wacker saw. And so, you know, this is what the problem turns out to be if you read the district court's view. The district court has broad discretion under Daubert, as you well know. Absolutely. He takes a look at these factors and said, this just isn't good enough. Why is that an abuse of discretion? Because he limited the – what the expert was required to do to only the criteria outlined. I see. I think you're misreading what the district court did. When you say he limited, he focused on these two factors. He took a look – the district court took a look at the evidence, took a look at the factors, and then pointed out where the problems were. That's not necessarily limiting. It's pointing out where the problems are. Well, he didn't give any credibility or any consideration, Your Honor, to the other evidence that supported the expert's opinion. How do you know that? I mean, we get these allegations all the time. A whole bunch of materials in front of a district court, and when a district court, instead of discussing the entire universe of everything, focuses on what the problem is, then the lawyers come to us and say, ah, the district court ignored everything else. And that's not the way district courts work. They look at everything. Then they point out where the problems are. I understand, Your Honor. One problem is that then you identify – if the only way – if he has to – if he has to test this particular model in order for it to fall under Daubert, I don't think that Daubert and Kumho and its progeny stand for that proposition. He didn't say you had to test them. He looked at that as a missing factor in this case that convinced him that the gatekeeping function required that he keep it out. But he gave no consideration to the, for example, peer review. Well, with respect to the second issue that the court addressed specifically in its memo, I understand Your Honor's concern that, you know, I'm going to point out what he didn't consider. Right. But if you go specifically to the peer review material element, for example, his other concern was, well, there's no testing or no peer review materials that say the whack-or-saw mechanism – there's no peer review materials on that particular item. He would essentially suggest that without – if Galileo didn't drop the whack-or-saw from the Tower of Pisa, he couldn't establish that gravity makes the saw fall. With respect to the peer review issue, we very directly addressed that issue in the supplement, and the court made no mention of that. He said there's no peer review materials, and that's absolutely contrary to the record in this case. I'll save the rest of my time for rebuttal. Thank you. Thank you. May it please the Court. My name is Jill Goldsmith, and I represent Appalese. At the outset, I'd like to address three false statements made by appellants that may bear on your decision today. Sounds like the debate last night. Go ahead. Didn't get a chance to watch it. First, with respect to the warnings claim, Plaintiffs say we sandbagged them and provided our experts' report that gave them the evidence to support the warnings claim after oral argument. That's false. Record 100 shows that we actually filed those reports February 14th, three weeks – four weeks before the court's oral argument and before the rebuttal experts' opinions. Their expert filed a rebuttal to our expert two weeks before oral argument. They knew our theories of the case one month before oral argument, two weeks before they had their rebuttal argument or their rebuttal reports. They – we did not sandbag them. The only reason those reports were filed after oral argument in the court was because the court asked questions about the testing, which our experts showed, shows the threaded fastener vibrates tight, not loose. I spotted that. That was interesting. Yes. The court also had asked, are there any other incidents out there? Answer, no. So that is with respect to the warnings claim. If they had their evidence – well, actually all they have is an argument, but they had information about what our theory of the case was a month before oral argument. Second, the information in our experts' reports was not new and did not supply them with evidence to support a warnings claim. In their reply brief, they allege that there is a warning claim because Wacker did not warn about the dangers of kickback, another false statement. The owner's manual, which is in Record Site 71, Exhibit D, provides extensively discussion about kickback, discusses how it can occur, and says this causes the cutoff saw to be thrown back toward the user with great force and out-of-control risk of injury. The owner's manual also discusses the fact that when that work piece that you're working on is loose, it could also cause kickback, and it says be prepared to get out of the way. Make sure you get out of the way if you have to. So they had that information, our theory of the case, and the fact that there were warnings about the very thing they say we should have warned about, kickback. We did warn about it. They had that information in the owner's manual. Appellant had it, the owner's manual, in 1996. The expert had it for five years or four years before oral argument. Do those warnings at all suggest how that may occur? Yes. For example, by loosening? It has nothing to do with loosening. They explain that kickback occurs when the top of the cutting disc is used for cutting. They explain how it occurs and what to do to avoid kickback. They also say secure the work piece that you're cutting. In this case, he was cutting a motor, and he did not secure it. So they had that information long before discovery was cut off, and that brings me to my third point. Appellant misrepresents the record when they say discovery was not cut off. It was. Record 79 sets forth the discovery order in place at the time of the oral argument. The only deadlines that were extended were the deadlines for expert reports and depositions. The order said all other discovery remains the same, and I have those with me if you need to see them, but it's record 79. The order with respect to all other discovery was dated November 26, 2001, docket 47. It says all discovery shall be completed by September 30, 2002. So all discovery was closed. That's why the summary judgment motions were filed. In the face of a summary judgment motion, they need to come forward with evidence, not just the lawyer's argument, that a different warning would have made a difference. Can I ask you a question? Because I'm having trouble figuring out from this record exactly what happened to the failure to warn claim. As far as I can tell, was it or was it not part of the summary judgment? Because there's a statement in one of the papers saying, well, the other side has given up on that, and so that's by the boards. And the other side then, of course, comes in and says, no, no, no, no, no, we didn't give up on that. So tell me exactly what happened to this failure to warn claim. Sure. At the outset, I represent three defendants, and at the outset of the case I asked them, do you have a failure to warn claim because that affects indemnity and whether I could represent all three. They said we have no facts. This was January 2002, a letter from them. We have no facts. At this time? At this time. At this time. So you left out at this time. You've got to be complete when you answer questions. But the same day I had sent a letter that said, this will confirm you have no warnings claim. Tell me if you have one. In discovery, they had a duty to come forward with any evidence. But in the motion you sent a letter saying, well, this will confirm, tell me. Did they tell you? What did they tell you? They said nothing. I said we had a conversation, a telephone conversation. That I put in the letter. It's in the record 71, and said this will confirm you have no warnings claim. This is important to me because of my indemnity issue. They never called me and said you're wrong. So in the motion for summary judgment, we put that as a footnote. Plaintiff has we asked for summary judgment in our motion for summary judgment below, for summary judgment on the warnings claim. They responded and said, no, we have a warnings claim. And in reply we then briefed them. Timeout. This is where I'm having trouble. You asked for summary judgment on the failure to warn claim? Yes. Or you simply said at a footnote it's no longer an issue? No, I asked for summary judgment in that footnote. I said plaintiff has dismissed this claim. Please enter summary judgment on the warnings claim. That's in the footnote. And the response was? Their response, no, we have a warnings claim. Right. Reply. We said they haven't come forward with evidence and they cannot establish causation. Isn't that the point? In other words, we shouldn't be arguing about whether it's been waived or not. Right. Because I thought Ms. Counters very clearly said I will not, however, waive my right to any such claim, which makes total sense. At this point I don't know if I have one, but I'm not going to waive it. So I'm having trouble understanding Wacker's insistence on the waiver. The question I have is now we get to the hearing, summary judgment hearing. The warning claim is still on the table. And the question is, is there any evidence of a failure to warn, which raises a material issue of fact to defeat summary judgment? That seems to me to be the question from a legal standpoint that we have to answer. And what's your response? There are four reasons why the warnings claim should be dismissed. First, plaintiff bears a burden of proving that the manufacturer's failure to warn or to issue an adequate warning proximately caused the injury. That's Ghost Switch v. Honda. Discovery was over and they presented no evidence, no witness, no document, to support the warning claim. In response to the motion for summary judgment. In response to the summary judgment motion or at any other time did they produce any discovery and discovery was closed. Plaintiff must establish and bring forth evidence in the face of that motion for summary judgment that a different or additional warning would have avoided their injuries. They don't have that evidence because they don't know what caused his injuries. Was it the back of the guard that came to hit him, like our theory? Was it a loose guard and the saw blade itself? Was it a work piece, the stator plate coming from the motor? They don't know and they have no evidence as to what caused the injury, so they cannot have any evidence that a different or additional warning even if he did would have made a difference and avoided that injury. Well, I guess here it really should be simpler than that one way or the other. Is there anything in the record in response to the summary judgment that puts forth from an evidentiary standpoint a warning claim? No. There was simply an argument made in the response to the motion for summary judgment that a warning should have been given that someone can get seriously injured when wearing or when using a power saw. And, in fact, the Owner's Manual instructs precisely that. And that's why in our reply brief we said, Your Honor, that's why there's a requirement of a helmet, gloves, work boots, goggles, et cetera. Well, what did the district judge say about the failure to warn claim in the final judgment? Right. The court did not address that. Not a word. Right. The court did not address that. But you can affirm the summary judgment because plaintiff's whole theory on warnings depends on what caused this injury. It just isn't clear that summary judgment was granted on the failure to warn claim. And there's a notice up here under procedural history that plaintiff filed a complaint alleging, among other things, failure to warn. There's no mention of that at all. What he says is the summary judgment is granted in its entirety. And, Your Honor We have a final judgment on all claims because he orders judgment in favor of defendants. Correct? That's right. Can't we just simply have a situation where he didn't specifically mention in his order anything about the warning claim? He granted the summary judgment in its entirety. And that's the last sentence. Now, did anybody go back in on reconsideration and say, hey, you forgot the failure to warn claim? Pellants didn't. We didn't need to. Because without evidence. They did not. No. No. And we didn't need to because they granted on all claims. And without evidence in the record as to what, admissible evidence in the record as to what caused his injury, plaintiffs have no admissible evidence to support the warning claim. You must come forward with evidence to show that a different or additional warning would have avoided the injury. That's go switch. They cannot show that proximate cause because they have no admissible evidence as to what happened here. What I am concerned about is the district judge seeming to say that you needed peer review with respect to these SAWs or peer reviews with respect to this principle as applied to SAWs. It seems to me that under that kind of a narrow view of Daubert, that it would be near on impossible for most experts to testify. Because so many items on which we know experts are experts and testify are not really subject to the traditional academic peer review, are they not? My time is up. I'm happy to answer your questions. Please go ahead and answer the questions. Sure. We won't let you escape that easily just because of the clock. I'm happy not to. Everybody watches the clock and then runs for cover. Go ahead. What we have here is plaintiff says there's a generic statement that threaded fasteners come loose. Therefore, it occurred on this SAW as designed with a lock washer because there was an accident. This is where they're having a disconnect. Each step in the analysis must be based on objective, verifiable, and scientific methodology. That's Kumho, Daubert. Not really. Technical is more accurate. You know, I'm troubled in candor having authored the amendment to rules 701, 702, and 703 at the continued emphasis on Daubert as though it's all encompassing when, in fact, the kind of thing that's involved here is really Kumho. And Kumho made it clear, did it not, that you don't have to go through the precise tests that were set up in the Daubert case when it talked about scientific evidence. I agree. There must be some methodology to connect a concept of generic screws, there are screws in this courtroom, and the concept that they vibrated loose on this Wacker SAW. What we actually have in this record, Your Honor, is lots of evidence that this saw never vibrated loose. Their own appellant, a plaintiff, said, I used it hundreds of hours with it never vibrating loose. But that's not responsive to the peer review question, is it? The only thing that was peer reviewed is a generic concept that a screw with threads vibrate loose. There is no peer review. Why would you need more? Do you have to have peer review at all? Absolutely. There has to be something to connect a threaded screw as a concept that vibrates loose with it vibrating loose on this occasion, particularly here where the record shows that plaintiff never testified, it never vibrated loose in the hundreds of hours I used it. Mr. Ogburger's assistant did use a Wacker SAW because he needed it for his shop, and it did not vibrate loose when he used it. We have Wacker's testing that shows it vibrates tighter when it's used. This has a lock washer on it as designed. You need peer review of that, in your view? You need something that shows that this design, it's not just a threaded screw, it's got a T-bolt, it's got a star knob, it's got a lock washer, which they, their own expert says, is designed to keep it tight. So what is peer review? Peer review is somebody in the world who agrees with Ogburger. Well, that's the sort of thing that, you know, it originated with things like the New England Journal of Medicine, the AMA Journal, in which before articles are, in which articles are vetted before they're published. That's what peer review is about. Now, Kumho made it plain, did it not, that peer review was not something that was a sine qua non of the issue of admissibility. Your Honor, the, first of all, the trial court has the latitude to decide what's important. There was nothing to peer review here because there was no methodology employed by this expert. There was no peer review of any. The way I read what the court said, he said, first of all, Daubert provided a non-exhaustive list, citing El Sayed, saying the trial court has latitude, and then he says the problem here is that Augsburger didn't test the Wackerd saw, even though it was available for testing, so we have no tests on the saw itself, and then he says in that light, failure to produce any published tests on the fastening system or other types of power saws. He doesn't have anything. He didn't test the saw, and he doesn't have any information about testing at all. That's the way I read this. Right. Well, Your Honor, in Smith versus Ford, the plaintiff's expert in that case at least had Ford's testing to rely on. They haven't produced tests done by anyone, literature by anyone, reports by anyone or anyone in the world who agrees with him or who has ever seen a Wacker saw vibrate loose under use. There is nothing in the record, nothing in the world, that with this design, this thread, the way they're designed, which, by the way, vibrate tight, with this lock washer, which is designed to keep it tight, would vibrate loose under the use of an actual saw. And what we have in the record is hundreds of hours of use where it does not vibrate loose. Under those circumstances, testing, showing somewhere, someone, that it can vibrate loose under the use of a saw, is very important. You're over time, but we've asked you a ton of questions. If there's something else you feel that you must tell us, please go ahead. Well, with respect to the warnings claim, I just want to get back to that. There is no facts, no witnesses, no documents that the warnings provided were not accurate, adequate to no facts, witnesses or documents to show proximate cause or that a different additional warning would have made a difference. And then with respect to the plaintiff's claim here, what we have additionally is there are four possible hypotheses, four other things that could have occurred that had nothing to do with a loose guard that plaintiff's expert failed to test or rule out. And under Clara v. Burlington, that also supports exclusion of his testimony. The four other possibilities are that, one, it didn't have a lock washer on it. Two, so it was not in its as-designed condition. Two, our theory, which is a tight hood, but a kickback occurred and the back of the saw hit him. Three, the stator plate from the workpiece he was cutting simply came loose and came and hit him in the face. Augsburger did not consider or rule out or test or evaluate those other hypotheses as to what occurred here, all of which have nothing to do with his theory of a loose guard. That alone supports exclusion. The failure to rule out other possible causes of this accident supports exclusion of his testimony. And without evidence of the record, as well as the blue brief says in our motion for summary judgment, defendants for the first time suggest that the saw is not designed to protect against flying pieces of metal and that Bobacker's injury could have occurred in the absence of any defect. They say, well, risk of such a life-threatening and life-altering injury from normal use is not a risk for which defendants warns its users. So they say your admissions provide sufficient evidence to sustain the failure to warn claim, at least for the purposes of summary judgment. What's your answer to that? Two things. You say, hey, this thing can kill you even if you do it right. And they say, well, you didn't warn us about that. The Owner's Manual talks about that precisely. It says, loose workpieces can come, can, if the, it says, caution, if there is a chance be prepared for kickback. Make sure you get out of the way if you have to. There is other warnings in the Owner's Manual itself that talk about workpieces coming back to you. Second, there is no evidence in the record that a guard is designed to prevent loose workpieces from flying into your face, such as a skater plate that came loose. There is no literature, et cetera, to say that a guard is designed to do that. Oxford had nobody but himself to support any opinion that a guard can be a catcher's mitt. One final question. In your footnote, why did you accuse the other side of waiving the failure to warn claim when the wording was, however, I will not waive my right to any such claim? Because I honestly thought it was, there was no such claim. When I sent my letter, I said, this will confirm that we have no warnings claim. Let me know if I'm wrong. And in ten months, I heard nothing from them. I actually thought there was none. But waiver requires something more than silence, doesn't it? Well, coming forward before discovery closes with a witness who will say that there was an inadequate warning or a document that says there's an inadequate warning. But the Owner's Manual does supply the warnings about workpieces coming in your face. That is why the helmet, the gloves, the goggles were necessary. And this gentleman ignored all those warnings and undergoes which the Court says, you cannot establish proximate cause whereas here the plaintiff ignores the warnings that are provided. Here, same thing. Were the warnings to wear goggles, helmet, boots, earpieces were ignored. Black jackets, driving a Humvee. Well, you bet, Your Honor. A power saw is a very dangerous power tool. This is not a toy. That's why that Owner's Manual said wear these items. You will be injured. Thank you, counsel. We appreciate your help. We'll hear from the other side. I start from the assumption that you understood fully that your side had not waived the failure to warn claim. There's a reason, Your Honor. I sent a letter to Ms. Goldsmith. Okay. And that reason. And so you went into the summary judgment motion fully aware that it's on the table. Absolutely. Absolutely. And according to your blue brief, you didn't advance any evidence at all. You relied on their admissions but without telling anybody you were relying on their admissions. Well, I don't think I have an obligation to tell them I was relying on their admissions. Well, I mean, you were facing a summary judgment motion. Right. You're called on the carpet and you're asked what's the evidence you're going to support. You offer nothing, and you don't even identify what the evidence is that you're going to rely on. I don't think that's accurate, Your Honor. We did identify the evidence on which we relied on, and it was their expert report on which we relied to support our failure to warn claim. Well, when I went through your separate statement of facts, because I was hoping I might find some clue about the failure to warn, and I didn't see anything there, and then I looked at the transcript of the argument, I'm not sure how the court would divine the evidence. Your Honor, it was mentioned, I believe, in our opening brief, if not our closing brief, that, first of all, we moved to strike their report initially. Then what we outlined in our briefs was that their expert indicates that in his report that the blade ran at 113 miles per hour, and that Bobacher's injuries were the result of the kickback. Well, wait a minute. You're talking about your briefs now, and Judge McGovern is asking you about the evidence that was in front of the court in your statement of facts and in your oral presentation, and, frankly, I didn't see any place where you identified the failure to warn claim and filled it out in terms of what you were going to prove either. I might have misspoke, Your Honor. I thought it was in our response to motion for summary judgment. To the motion for summary judgment? Can you give us an example? In our brief in the response to the motion for summary judgment. Can you give us a record site so we can go back to that? I can't, Your Honor. I'm sorry. What you could do is we have a little piece of paper that the clerk has for supplemental references. Okay. So maybe when we finish, you could fill that out and give a copy to the other side and then give it to the clerk, and then we'll know where in. You're talking now about your argument brief to the district court? Well, you don't know. I don't know. I don't want to misspeak. When you find out, you can tell us. How's that? I agree to that. I know what I have noted is that at record item number 71, which is the supplement, which is their supplemental, which is their statement of facts, at exhibit D on page G, are the warnings related to the matter of kickback. That's their stuff? That's correct. Where's your stuff? Well, that's what I'll have to provide you on the little slip of paper. All right. With respect to the issue of us having to come forward with the information, the last time I checked, expert discovery is discovery under the rules, and although discovery in terms of interrogatories was closed, expert opinions were obviously not closed, because they were being provided at the time of summary judgment, and expert depositions had not been completed. So with respect to the idea that discovery was closed and I didn't provide any evidence, I don't think that's accurate. Well, no, but we just need to know what the evidence is. I understand. The district court can't be expected to somehow sort through the expert reports and find the factual issue. That's not the district court's obligation. I agree. That's my obligation. And also with respect to the failure to warn claim, if you look at the issue of the failure to warn claim, we raised the issue of the failure to warn claim in our responsive brief. I know we argued it. I'm not specific. You didn't mention that in your blue brief either. Which part? That's what you're just talking about. Okay. You rely entirely on what you claim are admissions on the part of the other party. I understand. Well, one issue is with respect to the fact that all they asked for was judgment to be entered because we'd waived our claim. Well, but you knew that wasn't going to happen. I mean, you fought like tigers and you said, It's on the table, folks. I agree, but where's the court's ruling? Everybody's looking to you to come forward and support your claim, and you say, Well, without telling anybody, we're relying on the other side. My reflection is that's not what we did. Well, hopefully you'll be able to find something different. I will. I appreciate your time. Thank you, Your Honors. Thank you, Counsel. Mr. Sargat is ordered submitted.
judges: Trott, McKeown, Shadur